# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### September 22, 2010 Session

## STATE OF TENNESSEE v. JULIO RAMIREZ

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2004-C-2133    Mark J. Fishburn, Judge**

---

**No. M2009-01617-CCA-R3-CD - Filed June 8, 2011**

---

A Davidson County jury convicted the Defendant, Julio Ramirez, of six counts of aggravated sexual battery, one count of rape of a child, and one count of assault, for crimes involving multiple victims, and the trial court sentenced him to an effective sentence of eighteen years of confinement. The trial court subsequently reduced this sentence to fifteen years following a motion for new trial hearing.  On direct appeal from his convictions, the Defendant contends: (1) his trial counsel deprived him of the effective assistance of counsel by failing to move to sever the offenses with respect to the multiple victims; (2) he did not knowingly waive his right to be tried separately for the offenses and, as such, his joint trial for these offenses violated his rights to due process, a jury trial, and the effective assistance of counsel; (3) the evidence was insufficient to support his conviction for rape of a child; (4) the trial court improperly limited the defense's cross-examination of the victims' mother; (5) the trial court improperly limited the defense's presentation of character testimony; (6) the State made improper remarks during closing argument; and (7) the trial court erroneously instructed the jury.  After a thorough review of the record and applicable law, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in
Part, Reversed in Part, and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, joined.

David L. Raybin, Nashville, Tennessee (on appeal), and Barry Tidwell and Eric Carter, Nashville, Tennessee (at trial), for the Appellant, Julio Ramirez.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney

General; Victor S. Johnson, III, District Attorney General; Hugh Garrett and J.W. Hupp, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts
### A. Trial

This case arises from the Defendant's rape and sexual battery of his two minor granddaughters in February 2004. A Davidson County grand jury indicted the Defendant in August 2004 for six counts of rape of a child and four counts of aggravated sexual battery with respect to his younger granddaughter, C.R.[1] The indictment also charged the Defendant with four counts of aggravated sexual battery with respect to his older granddaughter, M.R.

At trial, the following evidence was presented: T.H., the victims' mother, testified she lived in Nashville with her daughters C.R. and M.R., the victims in this case, and with their older brother, R.R. T.H. had been married to the victims' father, who was the Defendant's son, but they divorced in June 1998, shortly before the victims' father died in February 1999. Later that year, the Defendant and his wife, who lived in California, asked permission to periodically visit T.H. and her children in Nashville. T.H. assented, and from 1999 to 2004 the Defendant and his wife visited once or twice a year.

When the Defendant and his wife visited, T.H. arranged for them to sleep in M.R.'s room and had M.R. and C.R. sleep together in a room with bunk beds. T.H. testified that, because she worked a night-shift as a nurse, she did not know whether her sleeping arrangements were heeded during these visits. The conduct in this case occurred when the Defendant and his wife made the last of these visits in February 2004.

C.R. testified she was eight years old when her grandparents visited in February 2004. According to C.R., during this visit, her grandmother and M.R. slept together in M.R.'s room, and she and the Defendant slept together in her room, which contained the bunk beds, and they shared the bottom bunk. C.R. testified that her grandfather had, in fact, always slept with her in her bedroom during each of his visits leading up to the February 2004 visit. C.R. testified that, during this February visit, the Defendant began to sexually abuse her, sometimes during the day but mostly during the night, while they shared a bed together. She recalled that on more than one occasion the Defendant touched her breasts and her buttocks, both over and under her clothes, with his hands and also with his mouth. He also "more than

---

[1]Out of respect to the minor victims in this case, we will refer to the victims by their initials only. In order to avoid inadvertently identifying the victims, we also will refer to the victims' mother and brother by their initials, as well.

2

once" touched C.R.'s vagina with the palm of his hand and with his fingers, and he placed his mouth on her vagina, causing C.R. to hurt "really, really bad." C.R. testified that the Defendant twice penetrated her vagina and "butt" with his penis during this time. She testified that this "hurt really bad." C.R. recalled the Defendant calling her "mamacita" and telling her that he "want[ed] her" while he sexually abused her. She repeatedly told the Defendant, "Leave me alone." She recalled that, during one of these incidents, the Defendant attempted to put his penis in her mouth, but she told the Defendant she had to go to the bathroom and left the room to sleep with her mother.

The abuse went on throughout C.R's grandparents' visit until, one day, while she, her grandfather, and M.R. were in a movie theater, she overheard her grandfather ask M.R. whether she "had ever had sex before." C.R. recalled also that the Defendant stroked her leg while they were in the theater. The next day, while her grandparents were at church, C.R. disclosed to her mother that the Defendant had been sexually abusing her and that she overheard him ask M.R whether she had had sex before. Her mother became "really scared" and decided to write the Defendant and his wife a letter asking them to leave.

After T.H. wrote the letter to the Defendant and his wife, she arranged a "set-up": T.H. instructed C.R. to go play in her room while she hid in C.R.'s closet, leaving the closet door cracked half-way. When the Defendant and his wife returned from church, the Defendant entered C.R.'s room and asked, "What are you doing?" to which C.R. responded, "I'm just playing." The Defendant then asked, "Can I play with you?" and moved close to C.R. The Defendant began to kiss C.R. on her neck and said, "I missed you." The Defendant began to rub C.R.'s breasts with his hands, refusing to stop even when C.R. said, "I don't want to be touched there." The Defendant soon heard a noise, however, and stopped groping C.R. to investigate the source of the noise. He looked around the room and, opening the closet, found C.R.'s mother. Her mother said something to the Defendant, to which the Defendant laughed and "ran out of the room like he was scared."

According to C.R., after being discovered, T.H. emerged from the closet and gathered her children in the hallway. She instructed C.R. and M.R. to give their grandparents the letter she wrote previously that day. The girls delivered the letter to their grandparents who were in the living room. The Defendant said something in Spanish to his wife, the two rose and packed their belongings, and the Defendant and his wife were gone within minutes of receiving the letter.

M.R. testified that she always looked forward to seeing her grandparents when they visited from California. M.R. said that this changed when they visited in February 2004 when she was nine years old. She testified that her feelings about her grandfather changed, however, during their February 2004 visit. M.R. recalled that the first night of the February 2004 visit, her grandparents and her sister all slept together in the same bed with her in her

3

bedroom. When she woke up the next morning, however, only she and her grandfather, who was already awake, remained in bed. After M.R. said, "Good morning," the Defendant responded, "Good morning" and "I love you." At this point, the Defendant turned toward her, though she was lying on her side facing the wall with her back to him, and he began to kiss her cheek. The Defendant began to rub her breasts, and he pressed his penis against her bottom. At this point, M.R. got out of the bed and left the room. Her grandfather did not say anything to her as she left. M.R. recalled being scared by this event.

M.R. testified that, from that point forward during her grandparents' visit, the Defendant rubbed her bottom with his hand every time he hugged her, which scared M.R. M.R. confirmed that, later in the week, when the Defendant took M.R. and C.R. to a movie theater, while they were watching the movie the Defendant asked her whether she had ever had sex before.

T.H. testified, confirming that the first she heard of the Defendant's behavior was when C.R. "shared some concerns" with her a few days before the Defendant and his wife were supposed to return to California. She confirmed that, in order to have "concrete evidence of her own," she arranged to view how the Defendant behaved with C.R. when he was unaware of her presence. Accordingly, while the Defendant and his wife were at church, T.H. instructed her children to tell the Defendant when he returned that she had stepped out to help her friend Gloria. She then went and hid in C.R.'s room, where C.R. was playing alone, and waited for the Defendant to return. She instructed C.R. to stay within her view.

When the Defendant and his wife returned from church, T.H. heard the Defendant ask M.R. where her mother was, to which M.R. responded that she had gone to her friend Gloria's house. T.H. said the Defendant "immediately" came into C.R.'s room and walked up to C.R., who had her back turned to him. T.H. saw the Defendant "grab[] around [C.R.'s] chest and start[] kissing her up the side of her neck." She saw the Defendant cup his hands around C.R.'s breasts and massage her breasts. C.R. began squirming to try to get away from her grandfather, and she tried to block him from kissing her. T.H. recalled that the Defendant then abruptly stopped, said, "Oh, I'm going to play tea party with you," and walked toward the closet. The Defendant "rip[ped]" the closet door open and cried out "Bruja!" The Defendant next "thr[ew] the [closet] door back closed and [went] storming out of the room."

T.H. confirmed that, shortly after observing the Defendant touch C.R., she had her daughters give him a letter she had penned earlier that day asking the Defendant and his wife to leave. She testified that the Defendant and his wife were gone within ten minutes of receiving this letter, and that they said nothing to anyone as they left. T.H. later reported the Defendant's conduct to police.

The trial court held a jury-out hearing in which T.H. testified during cross-

4

examination that, before the children's father died, she reported to police that he had sexually abused their son, R.R. She confirmed that police investigated this report but that police never charged him with anything related to this report.

Carolyn Smeltzer, a nurse practitioner with Our Kinds Clinic in Nashville, examined C.R. in April 2004, two months after the reported February 2004 incident, as a result of T.H.'s report of sexual abuse. C.R. displayed no injuries, infections, or abrasions during this examination. Smeltzer testified, however, that girls who have been sexually abused "most common[ly]" do not display injuries or infection. She added that finding evidence of sexual abuse more than a few days after the abuse occurred is "very uncommon." Smeltzer explained that, typically, a child's hymen is only "completely torn" where the vagina has been fully penetrated. In contrast, where penetration of a child's vagina was only "slight," the hymen may only be partially torn. Smeltzer testified that such a partial tear could easily have healed in the two months that passed between the Defendant's February visit and her April physical examination of C.R. Smeltzer did not examine M.R., as the alleged abuse would have left no injury or abrasion.

At the conclusion of the State's case, the State entered an election of offenses, describing the Defendant's conduct it wished the jury to consider as to each charge against the Defendant. Because it will be relevant later in our analysis, we note that the State's election of offenses described the conduct underlying Count 7 as the "rape of a child allegedly occurring when [the Defendant] penetrated [C.R.'s] genitals with his penis."

The Defendant testified on his own behalf, confirming that he and his wife made a series of visits to T.H. and her children between his son's death and the charges in this case. He testified that, when he made these visits, he observed that T.H.'s home was unkempt, with "clothes all over, food all over, [and] bags of vegetables on the floor." The Defendant said this disorder prompted him to consider attempting to obtain custody over his grandchildren. He said T.H. may have suspected his plans.

The Defendant acknowledged that, during his February 2004 visit, he and his wife shared a bed with his granddaughters. He denied, however, that he was ever alone in bed with either of his granddaughters or that he had ever sexually abused either of his granddaughters. He confirmed that he asked M.R. during a movie whether she had ever had sex, but he explained that he only asked this question because she first asked him whether it was "okay" to have sex.

The Defendant testified that, on the day before he and his wife planned to leave, he and his wife returned from church to find that T.H. had temporarily stepped out of the house. The Defendant said his wife went into the kitchen, and he went to C.R.'s room where she was playing. Of what happened next, the Defendant said, "I approached her, I kiss her up

5

here and I tickle her, I did tickle, tickle, tickle, tickle." The Defendant then saw through a crack in the closet door that T.H. was hiding in the closet. Angered by this deception, the Defendant flung open the door and called T.H. a "witch" in spanish. He confirmed that he and his wife left shortly thereafter after receiving a letter from T.H.

The Defendant's wife, Martha Ramirez, denied that her husband ever slept alone with his granddaughters when he visited their home in Nashville. Ramirez claimed to have been in C.R.'s room when T.H. was watching the Defendant interact with C.R. from the closet. She claimed that the Defendant was only "showing affection" to C.R., kissing her forehead and tickling her.

The Defendant presented several character witnesses. Sylvia Mendoza, an interpreter and real estate agent in California, testified that she had been friends with the Defendant for eighteen years and that the Defendant had an excellent reputation in the community. Mendoza said the Defendant had babysat her children in the past. She described him as respectable, trustworthy, and sincere. Scott Ochoa, the city manager for the city of Monrovia, California, testified that he had known the Defendant for fifteen years. He testified that the Defendant had an excellent reputation and that he had no concerns about allowing the Defendant to be around his children. The Defendant's three sons, Carlos, Julian, and Efrien all testified that they had a good relationship with their father and that their father had a good reputation in the community.

At the close of proof, the jury convicted the Defendant of four counts of aggravated sexual battery, one count of rape of a child, and one count of assault against C.R. The jury convicted the Defendant of two counts of aggravated sexual battery against M.R.

## B. Sentencing

Following entry of the jury's guilty verdicts in this case, the Defendant filed his first motion for new trial. In this motion, the Defendant alleged the evidence was insufficient to support his convictions, and he requested permission to amend his motion "following receipt of the transcript in this case."

The trial court held a hearing on May 1, 2006, during which it heard argument on the Defendant's motion for new trial and sentenced the Defendant. During this hearing, defense counsel refrained from presenting evidence, explaining that, due to the recent U.S. Supreme Court case *Blakely v. Washington*, which was issued in June 2004, he feared inadvertently conceding any enhancement factor and thereby supplying the trial court with a basis upon which to enhance the Defendant's sentence under *Blakely*. The trial court, applying two enhancement factors and several mitigating factors, sentenced the Defendant to eighteen years for his rape of a child conviction and nine years for his aggravated sexual battery

6

convictions, and eleven months and twenty-nine days for his assault conviction. It ordered the sentences to be served concurrently, for a total effective sentence of eighteen years.

On the same day of the sentencing hearing, the trial court also entered a minute entry denying the Defendant's original motion for new trial. On September 5, 2008, the Defendant filed an "Amended Motion for New Trial," in which he raised twelve new issues and stated that the trial court "allowed the new trial motion to be amended following receipt of the transcript in this case" and that counsel "had been awaiting the resolution of the sentencing decisions by the Tennessee Supreme Court and the United States Supreme Court so as to seek relief of the Defendant's sentence." The trial court denied this motion on May 1, 2006, but, more than two years later, granted the Defendant's request to amend his motion for new trial, allowing him to add twelve additional issues to his motion for new trial on September 5, 2008. The trial court denied this motion as well, but on June 23, 2009, it allowed the Defendant to file a second amendment to his motion for new trial, alleging two additional grounds for relief: (1) that the trial court erred when it sentenced the Defendant; and (2) that his attorneys at trial were ineffective for failing to move to sever the charges with respect to his two granddaughters. The trial court held a hearing on this second amended motion wherein the Defendant presented evidence, including the testimony of his trial attorneys, in support of his claim of ineffective assistance of counsel. After the hearing, the trial court entered a written order denying his motion with respect to his ineffective assistance claim but granting it with respect to his sentencing claim. The trial court executed amended judgments reducing the Defendant's sentence from eighteen to fifteen years. The Defendant now appeals these judgments.

## II. Analysis

On appeal, the Defendant contends he is entitled to a new trial on the basis of several errors he alleges took place before and during his trial. The State responds, first, that the Defendant's appeal should be dismissed because he did not timely file his notice of appeal. Before further discussing the issues the Defendant raises on appeal, we address our ability to review the Defendant's appeal.

### A. Compliance with Procedural Requirements

In order to preserve certain issues for appeal and transfer jurisdiction of a criminal defendant's case from the trial court to an appellate court, the defendant must raise the issues in a timely motion for new trial and then timely file a notice of appeal. Because the timeliness of a defendant's notice of appeal depends in part upon the filing of his motion for new trial, we first address the filing of the Defendant's motion for new trial and his subsequent attempts to amend this motion.

## 1. Motion for New Trial and Attempted Amendments Thereto

Tennessee Rule of Criminal Procedure 33 provides that a motion for new trial must be made in writing "within thirty days of the date the order of sentence is entered." Thus, the rule contemplates that a defendant will not file his motion for new trial until the trial court has entered its uniform judgment setting out the defendant's sentence and that, from that date, he will have thirty days to file his motion for new trial. Because this thirty-day period is jurisdictional, the trial court cannot expand its duration. *State v. Hatcher*, 310 S.W.3d 788, 799-800 (Tenn. 2010); *see* Tenn. R. Crim. P. 45(b)(3) ("The court may not extend the time for taking any action under Rules of Criminal Procedure 29, 33 and 34, except to the extent and under the conditions stated in those rules."). However, issues raised within a prematurely filed motion for new trial are properly preserved where: (1) the State does not object to the premature filing either at trial or on appeal; and (2) no prejudice accrued to the State from the trial court's consideration of the issues raised in the premature motion. *Id*. at 800. Rule 33 provides that the trial court "shall liberally grant motions to amend the motion for new trial until the day of the hearing on the motion for a new trial." Tenn. R. Crim. P. 33. As it will be highly relevant at a later point in our analysis, we note the 2010 case of *State v. Hatcher*, in which the Tennessee Supreme Court held that, contrary to its language in prior opinions, a defendant may not amend a motion for new trial after the trial court has denied the motion for new trial. 310 S.W.3d at 800. This Court has previously applied *Hatcher* retroactively. *See State v. Arturo Jaimes-Garcia*, No. M2009-00891-CCA-R3-CD, 2010 WL 5343286, *8-9 (Dec. 22, 2010), *perm. app. denied* (Tenn. May 31, 2011).

In this case, after the jury entered its verdicts on February 2, 2006, and was discharged, appellate counsel entered his appearance as "lead counsel" for the Defendant, noting the Defendant's two trial counsels would continue to represent the Defendant. On April 21, 2006, the Defendant filed a motion for new trial, alleging the evidence was insufficient to support his convictions and requesting permission to amend his motion for new trial "following receipt of the transcript in this case." The trial court held a sentencing hearing on May 1, 2006, wherein it also heard and ruled upon the Defendant's motion for new trial. On this day, the trial court entered its judgments of conviction and sentence against the Defendant as well as a minute entry reflecting its denial of the Defendant's motion for new trial. The State did not object to the Defendant filing his motion for new trial before the entry of his judgments of conviction and sentence.

By the letter of Rule 33, the thirty-day period in which the Defendant could file a motion for new trial did not commence until May 1, 2006, the day his judgments of conviction and sentence were entered. Therefore, the Defendant's filing of his original motion for new trial before this date was premature. The State, however, never objected to this premature filing, and we do not perceive it to have prejudiced the State. We conclude, therefore, that the Defendant's original motion for new trial was timely. *See Hatcher*, 310

8

S.W.3d at 800.

As mentioned above, the trial court heard and denied the Defendant's motion for new trial on May 1, 2006. This denial is reflected in a minute-entry of the trial court, which suffices as a written order to deny a motion for new trial in a criminal case. *See State v. Byington*, 284 S.W.3d 220, 226 (Tenn. 2009). Rather than file a notice of appeal within thirty days of the denial of his original motion for new trial, however, the Defendant waited over two years before filing an "Amended Motion for New Trial" on September 5, 2008. In this amended motion, the Defendant raised twelve additional issues and stated that the trial court "allowed the new trial motion to be amended following receipt of the transcript in this case" and that appellate counsel "had been awaiting the resolution of the sentencing decisions by the Tennessee Supreme Court and the United States Supreme Court so as to seek relief of the [D]efendant's sentence." In 2009 the Defendant filed an additional amendment to his motion for new trial, raising two additional grounds for relief.

At the time the Defendant amended in 2008 and 2009 his motion for new trial, neither the parties nor the trial judge had the benefit of the Tennessee Supreme Court's recent holding that amendments to timely filed motions for new trial may be had "*until* the day of the hearing on the motion for new trial," Tenn. R. Crim. P. 33(b) (emphasis added), but not after the trial court has entered an order denying a new trial. *State v. Hatcher*, 310 S.W.3d 788, 803 (Tenn. 2010). The Court advised:

> [T]rial courts should not hold any hearing on a motion for new trial until a reasonable time after the sentencing has been held, sentence has been imposed, and the judgment order entered. If the defense files a timely motion for new trial, the trial court should provide the defense with ample opportunity to amend the motion prior to holding the new trial hearing. If new counsel is sought and obtained, additional time for amendments to the motion for new trial may be granted as necessary. *Once the hearing on the motion for new trial is heard and an order denying a new trial has been entered, however, motions to make additional amendments must be denied.*

*Id*. at 788 (emphasis added).

Under *Hatcher*, the Defendant could not amend his motion for new trial after May 1, 2006, the date the trial court denied his motion for new trial. After this date, the trial court was without jurisdiction to entertain amendments to the Defendant's motion for new trial. Acting without the benefit of the Supreme Court's holding in *Hatcher*, however, the trial court in this case allowed the Defendant to amend his motion for new trial more than two years after it denied his original motion for new trial.

We conclude that the trial court lost jurisdiction in this case when it denied the Defendant's original motion for new trial and that, as such, the trial court was without jurisdiction when it later conducted hearings and entered orders in this case. Thus, the order the trial court entered denying the Defendant's first amended motion for new trial and the order it entered modifying the Defendant's sentence in response to his second amended motion for new trial were of no legal effect. Additionally, the findings of fact made by the trial court during these hearings do not affect our review of the issues raised herein. We may not consider the evidence presented at these hearings, such as the testimony elicited from the Defendant's trial attorneys at his July 15, 2009, hearing.

## 2. Notice of Appeal

A trial court's judgment becomes final thirty days after the entry of the judgment, unless a notice of appeal or post-trial motion is filed. Tenn. R. App. P.4(a); *See State v. Boyd*, 51 S.W.3d 206, 211 (Tenn. Crim. App. 2000). After a judgment becomes final, the trial court loses jurisdiction over the matter. *Id*. An appeal as of right is initiated by the filing of a notice of appeal within thirty days of the entry of the judgment. Tenn. R. App. P. 3(e) and 4(a). It is the defendant's responsibility to properly perfect his appeal or to demonstrate that the "interests of justice" merit waiver of an untimely filed notice of appeal. Tenn. R. App. P. 4(a).

In light of our conclusion that the trial court's May 1, 2006, denial of the Defendant's original motion for new trial ended the trial court's jurisdiction, the Defendant had thirty days from this date in which to file his notice of appeal. *See* Tenn. R. App. P. 4(c). The Defendant filed his notice of appeal on July 27, 2009, more than two years after the trial court denied his original motion for new trial on May 1, 2006. Because this notice of appeal was filed well outside the thirty-day time frame, the Defendant's notice of appeal was untimely. As such, review of the Defendant's appeal is available only as it serves "the interests of justice." *See* Tenn. R. App. P. 4(a).

In his brief, the Defendant addresses neither his late filing nor how waiving his late filing would serve the interests of justice. This omission, however, is likely due to the fact that, at the time briefs were filed in this case, *Hatcher* had not yet been decided. Under *Bough* and *Benton*, which allowed for unlimited amendments to motions for new trial, the Defendant's amendments would have tolled the thirty-day filing period for his notice of appeal, making his July 27, 2009, filing of his notice of appeal timely. However, eight days after the Defendant filed his brief*,* the *Hatcher* opinion was released, altering the deadline for amendments to new trial motions. The State's brief attacks the Defendant's ability to appeal the issues herein raised in light of the ruling in *Hatcher*. Despite the Defendant's failure to file a response brief addressing the State's waiver argument, we conclude that, in light of the recent nature of the change in the law interpreting Rule 33 and the gravity of the

charges against the Defendant, the interests of justice merit waiver of the Defendant's untimely filed notice of appeal.

### 3. This Court's Ability to Review Issues Raised by the Defendant on Appeal

On appeal, the Defendant requests our review of seven issues related to his trial, to wit, whether: (1) the Defendant's trial attorneys deprived him of the effective assistance of counsel by failing to move to sever the trials on his charges; (2) the Defendant knowingly waived his right to be tried separately for the offenses and, as such, whether his joint trial for these offenses violated his rights to due process, a jury trial, and the effective assistance of counsel; (3) the evidence was insufficient to support his conviction for rape of a child; (4) the trial court improperly limited the defense's cross-examination of the victims' mother; (5) the trial court improperly limited the defense's presentation of character testimony in support of the Defendant; (6) the State made improper remarks during closing argument; (7) the trial court erroneously instructed the jury.

Our rules of appellate procedure provide that a defendant must allege all grounds upon which he seeks a new trial in a motion in order to secure this Court's review of those grounds on appeal:

> [I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

Tenn. R. App. P. 3(e). Therefore, where a defendant on appeal raises a ground for relief that was not the subject of a properly filed motion for new trial, "the issue will generally be deemed waived and will be considered only within the limited parameters of an appellate court's discretionary plain error review." *State v. Banks*, 271 S.W.3d 90, 119 (Tenn. 2008). When "necessary to do substantial justice," this Court has the discretionary authority to "consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). We refer to this discretionary consideration of waived issues as "plain error" review. *See Grindstaff v. State*, 297 S.W.3d 208, 219 n. 12 (Tenn.2009).

Of the seven issues raised by the Defendant on appeal, the only issue properly before this Court is that which the Defendant alleged in his original motion for new trial, the

sufficiency of the evidence.[2]  The remaining issues, not being the subject of a proper motion for new trial, are waived and, as such, are not properly before us.  *See* Tenn. R. App. P. 3(e); *Banks*, 271 S.W.3d at 119.  Given the problematic timing of the *Hatcher* case, as it pertains to the Defendant's case, we conclude that consideration of some of these issues is "necessary to do substantial justice."  *See* Tenn. R. App. P. 36(b).  Other issues, as detailed below, we will refrain from reviewing in their entirety.  Thus, we elect to review for plain error several, but not all, of the issues the Defendant raises on appeal, despite his having waived them by failing to raise them in a proper motion for new trial.  *See Banks*, 271 S.W.2d at 119.

In addition to the issues the Defendant raises on appeal, we also will review for plain error the Defendant's original eighteen-year sentence based upon our determination that, because the trial court lacked jurisdiction to reduce the Defendant's sentence, its order reducing the Defendant's sentence to fifteen years had no effect.

### C. Issues not Reviewed

In light of our determination that we may not consider the evidence introduced at the July 27, 2009, hearing on the Defendant's second amended motion for new trial, we decline to review for plain error the Defendant's claims that he received the ineffective assistance of counsel and that, because he was never made aware of his right to be tried separately for the charges concerning his granddaughters, his joint trial violated his constitutional rights. In declining to review these claims on a less than complete record, we avoid precluding the Defendant from bringing this claim and receiving a full and fair hearing thereon in later stages of litigation, such as a post-conviction proceeding.  *See* T.C.A. § 40-30-111 (2010).

### B. Issue Preserved by Original Motion for New Trial

On appeal, the Defendant contends the evidence was insufficient to establish "penetration," a necessary element of rape of a child.  He argues that C.R.'s testimony does not clearly establish whether the Defendant penetrated her vagina or her anus and that, because the State in its election of offenses alleged that the Defendant penetrated C.R.'s genitals with his penis, the evidence is insufficient to support a conviction for rape of a child. He further argues that, because a medical examination of the victim revealed no sign of injury to or infection of her genitals, the evidence did not establish penetration.  He contends that, at the most, the evidence establishes the elements of aggravated sexual battery, not rape of a child.  The State counters that C.R.'s testimony established that the Defendant penetrated

---

[2]We note that a defendant need not raise sufficiency and sentencing issues in a motion for new trial in order to preserve review of these issues on appeal.  *See State v. Boxley*, 76 S.W.3d at 381, 389-90 (Tenn. Crim. App. 2001).

her vagina and that, as such, medical proof of penetration was unnecessary. The State contends that, the proof being sufficient to support the element of penetration, the evidence supports the Defendant's conviction for rape of a child.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). A conviction may be based entirely on circumstantial evidence where the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Smith*, 868 S.W.2d 561, 569 (Tenn. 1993). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view

13

of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

The Tennessee Code Annotated defines the crime of rape of a child as "the unlawful sexual penetration of a victim by the defendant . . . if such victim is less than thirteen (13) years of age." T.C.A. § 39-13-522(a) (2006). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body . . . into the genital or anal openings of the victim's . . . body, but emission of semen is not required." T.C.A. § 39-13-501(7) (2006).

In this case, the following exchange occurred between the State's attorney and the victim:

| | |
|---|---|
| [State's attorney]: | Okay. Did he ever touch you with anything else other than his hands or his mouth? |
| [C.R.]: | Yes. |
| [State's attorney]: | Okay. What else did he touch you with? |
| [C.R.]: | His penis. |
| [State's attorney]: | Okay. And where did he touch you with his penis? |
| [C.R.]: | Both. |
| [State's attorney]: | Both where? |
| [C.R.]: | Both private parts. |
| [State's attorney]: | Okay. What do you mean when you say "both private parts["?] |
| [C.R.]: | My butt and my vagina. |
| [State's attorney]: | Okay. When he would touch you with his penis, did it ever go inside you? |

14

[C.R.]:              Yes.

[State's attorney]:  Okay.  And how did that feel?

[C.R.]:              It hurt really bad.

The State is bound to prove that the defendant committed the crime with which he is charged in the specific manner it alleges in its election of offenses. *See State v. Johnson*, 53 S.W.3d 628, 631 (Tenn. 2001).  We conclude that a reasonable person could infer, as the jury in this case evidently did, that the victim meant that the Defendant penetrated her vagina. This inference, which was within the jury's discretion to make, is sufficient to support its finding that the Defendant penetrated C.R.'s vagina, as the State alleged in its election of offenses.

The Defendant's related contention that the absence of injury or infection of C.R.'s vagina proves that the Defendant could not have penetrated C.R. is similarly without merit. As the examiner testified in this case, finding evidence of past trauma is "very uncommon" more than a few days after an incident and most rape victims exhibit no signs of injuries and infection.

We conclude that C.R.'s testimony was sufficient to support the jury's finding that the Defendant penetrated C.R.'s vagina and that medical proof supporting her testimony is not required to support the jury's finding of guilt.  As such, the evidence supports the Defendant's conviction for rape of a child.  He is not entitled to relief on this issue.

### D. Issues Reviewed for Plain Error

As discussed above, we will review for plain error several of the other issues the Defendant raises on appeal, despite his having waived our review of these issues by failing to raise them in a timely motion for new trial.  Those issues are as follows: (1) whether the trial court improperly excluded evidence that the victims' mother had previously accused their father of sexually abusing their son; (2) whether the trial court improperly limited the testimony of the Defendant's character witnesses; (3) whether the State made improper remarks during closing argument; and (4) whether the trial court's jury instructions were in error.  Further, for the reasons previously stated, we also will review the Defendant's sentence.

Tennessee Rule of Appellate Procedure 36(b) states that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for new trial or assigned as error on appeal."  Accordingly, this Court will grant "plain error" review

15

pursuant to Rule 36(b) only where the following five criteria are met: (1) the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake; that is, the error was so significant that it "'probably changed the outcome of the trial.'" *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994)). If any of these five criteria are not met, we will not grant relief, and complete consideration of all five factors is not necessary when it is clear from the record that at least one of the factors cannot be established. *Id*. at 283. The party claiming plain error has the burden of persuading the appellate court. *Banks*, 271 S.W.3d at 119.

### 1. Victims' Mother's Previous Allegations of Sexual Abuse

The Defendant argues that the trial court improperly restricted him from cross-examining the victims' mother about her prior allegation to police that the victims' father had sexually abused their son. The victims' father was never charged with this abuse. The Defendant argues that, because the victim's mother initiated the charges in this case by reporting the Defendant's conduct to police, her credibility was at issue in this case. He contends that evidence of her previous allegation bore directly on her credibility and, as such, the trial court erred in prohibiting the defense from questioning her about this allegation. The Defendant asserts that, under *State v. Wyrick*, a defendant "is entitled" to cross-examine a witness about his or her prior false allegations of abuse. 62 S.W.3d 751 (Tenn. Crim. App. 2001).

The State responds that *Wyrick* and its progeny established that a witness's prior allegation of abuse is only admissible where the allegation has been shown to be false. The State argues that, because the Defendant offered no proof that the victims' mother's prior allegation was false, it was not admissible under *Wyrick*, and the trial court properly prohibited the jury from hearing evidence of the witness's prior allegation.

Under Rule 401, "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Rule 402 states, "All relevant evidence is admissible except as provided by the Constitution of the United States, the Constitution of Tennessee, these rules, or other rules or laws of general application in the courts of Tennessee. Evidence which is not relevant is not admissible." Tenn. R. Evid. 402. Finally, Rule 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. "The decision regarding the admissibility of [evidence] pursuant to these Rules lies within the sound discretion of the

trial court and will not be overturned on appeal absent a clear showing of an abuse of that discretion." *State v. Young*, 196 S.W.3d 85, 105 (Tenn. 2006) (citing *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978)).

Tennessee Rule of Evidence 608(b) provides that specific instances of conduct may be used to impeach a witness during cross-examination if the conduct is probative of the witness's character for truthfulness or untruthfulness. Tenn. R. Evid. 608(b). If the witness denies the conduct, the party proffering the evidence must be satisfied with that response and may not seek to prove the conduct by extrinsic evidence. *See* Tenn. R. Evid. 608(b). Before a witness can be questioned about the specific instance of conduct, the court, upon request, must hold a jury-out hearing "to determine that the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry." Tenn. R. Evid. 608(b)(1).

In *Wyrick*, a panel of this Court addressed the admissibility of evidence that a sex crime victims made a previous false allegations of sexual abuse. 62 S.W.3d at 776-85. The panel discussed the conditions under which such evidence would be admissible under Rule 404(b), as substantive proof of some matter actually at issue on trial, and under Rule 608(b), as a specific instance of conduct used to impeach the witness on cross-examination. *Id*. at 780. The panel emphasized that, "in the absence of proof that [the witness] falsified the other allegation," the prior allegation is immaterial and, thus, inadmissible under either rule. *Id*.

In this case, after the State examined the victims' mother, eliciting testimony that she, while hiding in a closet, observed the Defendant fondle C.R., the Defendant sought to question the victims' mother on cross-examination about a prior allegation she made against the victims' father that he sexually abused their son. The trial court held a jury-out hearing, wherein the victims' mother testified that, before the children's father died, she reported to police that he had sexually abused their son, R.R. She confirmed that police investigated this report but that police never charged the father with a crime as a result of this report. At the conclusion of the hearing, the trial court refused to allow the jury to hear the evidence about the mother's prior allegation, finding that it was not relevant because the Defendant had no evidence the allegation was false, whereas the State possessed evidence the allegation was true that it would be allowed to introduce in order to rehabilitate its witness:

I'm not going to allow it. I don't know that it's relevant. . . . [I]f I stop the questioning [with the fact] that [the victims' father] was never charged, I think it misleads the jury to think that, you know, she is rather, I don't know the exact word I'm looking for, is cavalier in making what is, would be considered very serious charges, and so we would have to allow that chance for the State to rehabilitate her, and that would be done through the [son's testimony that his father did in fact sexual abuse him.] And there's no allegation–if there were

17

allegations that he had done that to these victims as well, you know, your argument might be much stronger, but I just think that it misleads the jury, unless we open up a whole other can of worms, I don't think it's relevant to any of the issues in this case.

Because the trial court complied with the procedural rules of Rule 608(b) by holding a hearing and determining that a reasonable factual basis did not exist to establish that the victims' mother's allegation was false, we will not overturn the trial court's decision to exclude the evidence absent an abuse of discretion. *See* Tenn. R. Evid. 404(b).

We conclude that the evidence was not admissible under Rule 608(b), which requires a party to establish a "factual basis" for the conduct in order to impeach a witness. Tenn. R. Evid. 608(b)(1). The record being devoid of proof that the allegation was false, the allegation was immaterial to any issue to the Defendant's trial and, thus, inadmissible under Rule 401. *See Wyrick*, 62 S.W.3d at 781. We conclude that the trial court did not abuse its discretion in refusing to admit evidence of the victims' mother's prior allegation. Further, this issue does not rise to the level of plain error because the trial court did not breach "a clear and unequivocal rule of law" when it refused to admit evidence of the prior allegation. *See* Tenn. R. App. P. 36(b); *Smith*, 24 S.W.3d at 282-83. The Defendant is not entitled to relief on this issue.

### 2. Character Testimony in Support of the Defendant

The Defendant contends the trial court erred when it refused to allow his character witnesses to testify that, in their opinion, the Defendant was not the "type of individual who would molest children." He contends that, because Tennessee law permits a defendant to present character evidence of not only truthfulness but also "good character and reputation as tending to show that he would not commit a crime," the trial court should have allowed the proffered testimony.

The State responds first that the Defendant waived the issue by failing to make an offer of proof of the testimony he argues should have been admitted. The State also argues that the Defendant's claim fails on the merits. It contends that, because Tennessee law does not allow a defendant to present "conclusory testimony about a defendant's ultimate propensity to commit a crime," the trial court properly limited the Defendant's character witnesses to testifying only as to the Defendant's reputation for truthfulness and overall good character.

As the State correctly notes, the Defendant has waived this issue. Tennessee Rule of Appellate Procedure 36(a) provides that appellate relief shall not be granted to a party responsible for an error or who "failed to take whatever action was reasonably available to

prevent or nullify the harmful effect of an error." To this end, Tennessee Rule of Evidence 103(a)(2) provides that a party may only appeal the suppression of evidence where "the substance of the challenged evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were made apparent from the context." Our Supreme Court has held that, when the challenged evidence consists of oral testimony, "it is essential that a proper offer of proof be made in order that the appellate court can determine whether or not exclusion was reversible." *State v. Goad*, 707 S.W.2d 846, 852-53 (Tenn. 1986).

At the State correctly notes, after the trial court in this case announced its ruling that the Defendant would be restricted from presenting testimony that he did not exhibit behavior typical of a child molester, the Defendant failed to make an offer of proof of the suppressed testimony. Because the Defendant failed to make "a proper offer of proof" of the oral testimony in order to allow this Court on appeal to review its exclusion, our review of the issue for plain error will be difficult without a record of the testimony the Defendant wished to present. *See Goad*, 707 S.W.2d at 852; *see also* Tenn. R. Evid. 103(a)(2).

Evidence that is not relevant is inadmissible. Tenn. R. Evid. 402. Otherwise admissible relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Due to the great danger of unfair prejudice created by character evidence introduced to prove "action in conformity with the character or trait on a particular occasion," such evidence is generally inadmissible. Tenn. R. Evid. 404(a). Tennessee Rule of Evidence 404(a)(1), however, allows a criminal defendant to offer character evidence of a "pertinent trait of [the defendant's] character." Thus, a defendant may introduce evidence of his good character "as tending to show that [he] would not commit a crime." *State v. Phillips*, 883 S.W.2d 138, 153 (Tenn. Crim. App. 1994) (quoting *McKinney v. State*, 552 S.W.2d 787, 790 (Tenn. Crim. App. 1977)). Even a non-testifying defendant may offer such evidence. *Morrison v. State*, 397 S.W.2d 826 (Tenn. 1965).

In the event a defendant chooses to present the testimony of a character witness, the witness's testimony must comply with Tennessee Rules of Evidence 701, which governs the scope of non-expert witness testimony. Rule 701 limits a non-expert witness's testimony to opinions and inferences "rationally based on the perception of the witness" and "helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Tenn. R. Evid. 701(a)(1)-(2). A trial court's decision as to the admissibility of evidence will be reversed only upon a showing of an abuse of discretion. *State v. Powers*, 101 S.W.3d 383, 395 (Tenn. 2003).

In this case, the defense sought a preliminary ruling on the scope of character evidence

it would be allowed to present without opening the door to the introduction of extrinsic evidence of prior bad acts by the Defendant in California. In the course of determining this issue, the trial court ruled that the Defendant would not be allowed to present character evidence in the form of testimony from the Defendant's friends and family that the Defendant was not a "child molester":

> I am going to allow the [D]efendant to put on character proof, without opening the door to anything in California or other prior bad acts, of his general character and reputation for being a family man and general opinion . . . . I'm not having any concerns about him being around my children. There will not be anything that says, "I don't think he's a child molester. I don't think he has the propensity to do that. Based on what I know of him and my experiences with him, in my opinion, I'd let him take care of my children," you know, something to that effect. "In my opinion, he's a good family man. He's a loving family man." I will allow that broad opinion, but no one is to give an opinion as to his propensity to commit or not commit these crimes.

Later, the trial court explained that its ruling was based upon the difficulty of establishing a defendant's propensity to a "specific mode of conduct," such as sexual abuse, compared with the relative simplicity of establishing a defendant's lack of propensity to commit a crime:

> To reference a propensity of a specific mode of conduct is what they cannot get into. They can make the general observation, "He's always been very friendly around my children. He's always been loving around my children. I would have no problem with him baby-sitting my children, in fact, he has baby-sat my children," I will let that kind of specific conduct, but something that kind of gives the opinion of a mode of behavior over a lifetime to, I'm not going to allow to get in, I think that's too specific. And again, I don't know . . . how you establish a character trait of being a possible sex offender or child molester or not a child molester. Some of them are very, very good about hiding it for years or so.

We conclude that the trial court properly limited the scope of the Defendant's character witnesses' testimony. In this case, the Defendant sought to introduce lay testimony, which must be "rationally based on the perception of the witness," to establish his lack of a propensity to sexually abuse children. Tenn. R. Evid. 701. In our view, however, a lay witness lacks the specialized knowledge necessary to "rationally base" an inference or form an opinion as to whether a defendant displays behavior typical of a child molester. As the trial court noted, "[S]ome [sex offenders] are very, very good about hiding [their propensity to sexually abuse] for years . . . ." We conclude the trial court did not abuse its discretion

20

when it refused to allow the Defendant's character witnesses to testify that the Defendant did not exhibit behavior typical of a child molester. *See Powers*, 101 S.W.3d at 395. Because the trial court did not breach "a clear and unequivocal rule of law" when it refused to admit proffered testimony, it did not commit plain error. *See Smith*, 24 S.W.3d at 282-83. As such, the trial court's limitation was not plain error, and the Defendant is not entitled to relief on this issue.

### 3. Improper Remarks by the State during its Closing Argument

The Defendant contends the trial court erred in overruling his objection to the State's remark during its closing argument that "[the Defendant] knows he's guilty." He argues the argument was improper because argument must be based on evidence introduced at trial, and no confession was introduced at trial.

The State notes first that the Defendant waived review of this issue by failing to properly object to the remarks at trial. It further argues that the trial court did not abuse its discretion in not *sua sponte* addressing the State's remark that the Defendant was aware of his own guilt.

"Courts have recognized that closing argument is a valuable privilege afforded to the State and the defense and have afforded wide latitude to counsel in arguing their cases to the jury." *State v. Cleveland*, 959 S.W.2d 548, 551 (Tenn. 1997) (citing *State v. Bigbee*, 885 S.W.2d 797, 809 (Tenn. 1994)). We have recognized five general areas of prosecutorial misconduct: (1) intentionally misstating the evidence or misleading of the jury on the inferences it can draw; (2) expressing personal beliefs or opinions; (3) inflaming or attempting to inflame the passions or prejudices of the jury; (4) adding outside issues to the guilt or innocence issue; and (5) arguing or referring to outside facts. *State v. Goltz*, 111 S.W.3d 1, 5-6 (Tenn. Crim. App. 2003).

Tennessee Rule of Criminal Procedure 29.1(b) allows a closing argument to address any evidence introduced at trial. In addition to addressing the evidence, parties may also argue "reasonable inferences." *State v. Chico McCracken*, No. W2001-03176-CCA-R3-CD, 2003 WL 1618082, at *8 (Tenn. Crim. App., at Jackson, Mar. 24, 2003), *perm. app. denied* (Tenn. Sept. 2, 2003). When there is improper argument, the court must test whether the inflammatory statement negatively impacted the Defendant. To measure this impact, five factors should be considered: "(1) the facts and circumstances of the case; (2) any curative measures undertaken by the court and the prosecutor; (3) the intent of the prosecution; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength or weakness of the case." *Goltz*, 111 S.W.3d at 5-6. Curative measures by the court, such as proper jury instructions, will likely render the misconduct harmless. *McCracken*, 2003 WL 1618082, at *8 (citing *Zafiro v. United States*, 506 U.S. 534, 540-41

21

(1993), for the proposition that, "In the absence of compelling prejudice, proper instructions will generally be sufficient 'to cure any risk of prejudice' when one defendant's counsel argues that the codefendant is the guilty party").

In this case, after the State's closing argument, the Defendant moved for a mistrial on the basis of the State's having used the term "the guilty defendant" in its closing argument. The State denied having used the term, insisting that it said only that the Defendant "knew he was guilty." The trial court found that the State "once or twice" used the term "the guilty defendant" and concluded that, though such language was "improper," it did not require a mistrial. Our review of the transcript reveals that the State did not use the term "the guilty defendant" during its closing argument. Rather, the State said several times, "[The Defendant] knows he's guilty":

> What's also showing his guilt? and [that] he knows [he's guilty] is that on Monday morning, he says, "There's no way I was in bed with M.[], hah, they had to get ready for school." He knows he's guilty because he knows he was in bed with M.R. He also testified that there is no way [he] was alone ever in a bed with these girls, why, because he doesn't want you to know he was alone with th[ese] girls because he knows he's guilty. All those things show you, ladies and gentlemen, that this defendant is guilty.

We agree with the State that, by confining his objection to the language "the guilty defendant," the Defendant failed to contemporaneously object to the State's remarks. Thus, the Defendant has waived our review of the State's declaration that the Defendant knew he was guilty. *See Alder*, 71 S.W.3d at 302. However, this waiver is of little consequence because we have already elected, for the reasons set out above, to review the issue for plain error. *See State v. Marshall*, 870 S.W.2d 532 (Tenn. Crim. App.1993), *overruled on other grounds by State v. Carter*, 988 S.W.2d 145 (Tenn. 1999).

Although the State is afforded wide latitude in its closing argument, it must confine its remarks to those supported by the evidence either directly or by reasonable inference. *See McCracken*, 2003 WL 1618082, at *8. We agree with the Defendant that no direct evidence supports the State's assertion that the Defendant was aware of his own guilt. The State, however, did not assert that the Defendant admitted guilt. Rather, the State asserted that the Defendant's elaborate, implausible theory for why the victims would falsely accused him implied that he knew he was guilty. We conclude, therefore, because the State made its remark in an effort to argue "reasonable inferences" from the evidence to the jury, the remark was not improper. *See id*. Because the trial court did not breach "a clear and unequivocal rule of law" when it refused to grant a mistrial based on the State's remarks, it did not commit plain error. *See Smith*, 24 S.W.3d at 282-83. The Defendant is not entitled to relief on this issue.

22

## 4. Jury Instructions

The Defendant asserts the trial court erred in instructing the jury in two respects. First, he contends the trial court erroneously instructed the jury that a finding of "recklessness" as to the Defendant's actions would suffice to establish his guilt for both rape of a child and aggravated sexual battery. Second, he contends the trial court erroneously used the disjunctive "or" in its mens rea charge to the jury, which permitted the jury to reach a non-unanimous verdict as to the mens rea the Defendant possessed at the time he had sexual contact with the victims. We review each contention for plain error below.

A trial court has a "duty to give a complete charge of the law applicable to the facts of the case." *State v. Harris*, 839 S.W.2d 54, 73 (Tenn. 1992). Anything short of a complete charge denies a defendant his constitutional right to trial by a jury. *State v. McAfee*, 737 S.W.2d 304, 308 (Tenn. Crim. App. 1987). However, Tennessee law does not mandate that any particular jury instructions be given so long as the trial court gives a complete charge on the applicable law. *See State v. West*, 844 S.W.2d 144, 151 (Tenn. 1992). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997) (citing *State v. Forbes*, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995); *Graham v. State*, 547 S.W.2d 531 (Tenn. 1977)). In determining whether jury instructions are erroneous, this court must review the charge in its entirety and invalidate the charge only if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law. *State v. Vann*, 976 S.W.2d 93, 101 (Tenn. 1998).

### a. Inclusion of "Recklessly" Language in Jury Charge

### i. Rape of a Child

The Defendant contends that, by instructing the jury that the State must prove that the Defendant "acted either intentionally, knowingly or recklessly," the trial court erroneously instructed the jury that a finding of recklessness as to the element of "sexual penetration" would suffice to establish the Defendant's guilt of rape of a child. The Defendant argues the instruction was in error because penetration, the only conduct element of rape of a child, must be committed either knowingly or intentionally. The State responds that the instruction was not in error because the penetration element of rape of a child need only be committed with a mens rea of recklessness.

Tennessee Code Annotated section 39-13-522 defines the offense of rape of a child as "the unlawful sexual penetration of a victim by the defendant . . . if the victim is more than three (3) years of age but less than thirteen (13) years of age." (2003). As is apparent, the

offense definition does not specify the mens rea with which a defendant must commit the sexual penetration of the victim. Where a statutory definition "does not plainly dispense with a mental element, an intentional, knowing, or reckless mens rea suffices to establish the culpable mental state." T.C.A. § 39-11-301(c) (2003). Thus, a defendant need only sexually penetrate a victim with the mens rea of recklessness to commit the offense of rape of a child. *See State v. Barney*, 986 S.W.2d 545, 550 (Tenn. 1999).

In this case, the record reflects that the trial court instructed the jury as follows with respect to the offense of rape of a child:

> For you to find [the Defendant] guilty of rape of a child, the State must have proven byond a reasonable doubt the existence of the following essential elements: One, that he had unlawful sexual penetration of the alleged victim [C.R.]; and two, [C.R.] was less than thirteen years of age; and three, that he acted either intentionally, knowingly or recklessly.

The trial court then referred to its previously issued explanation of the culpable mental states of intentionally, knowingly, and recklessly. It also defined the element of "unlawful sexual penetration."

Contrary to the Defendant's position, a showing of intentional or knowing conduct as to penetration is not necessary to support a conviction for child rape. Thus, the trial court correctly instructed the jury that a showing of recklessness with respect to the Defendant's sexual penetration of the victim would suffice to support a conviction for child rape. We conclude that the trial court's instruction on the offense of child rape fairly submitted the legal issues to the jury and its inclusion of recklessness as a mens rea sufficient to commit child rape did not mislead the jury. *See Hodges*, 944 S.W.2d at 352. Because the trial court did not breach "a clear and unequivocal rule of law," it did not commit plain error. *See Smith*, 24 S.W.3d at 282-83. The Defendant is not entitled to relief on this issue.

## ii. Aggravated Sexual Battery

The Defendant contends that the trial court also erred by instructing the jury that the State must prove that the Defendant "acted either intentionally, knowingly or recklessly" in committing the conduct element of aggravated sexual battery. The State responds that, because the trial court clearly explained the distinct mens rea requirements for the distinct elements of aggravated sexual battery, the trial court's jury instruction was not in error.

Tennessee Code Annotated section 39-13-504(a) defines aggravated sexual battery as "unlawful sexual contact with a victim by the defendant" where the victim is less than thirteen years of age. T.C.A. § 39-13-504(a)(4) (2003). The various elements of aggravated

sexual battery contain distinct culpable mental states. "Sexual contact" must be accomplished "intentionally" with "the purpose of sexual arousal or gratification." T.C.A. § 39-13-501(6) (2003). Because the statute is silent as to the culpable mental state as to the victim's age, a showing of recklessness suffices to establish a defendant's culpability as to the victim's age. T.C.A. § 39-11-301(c); *State v. Howard*, 926 S.W.2d 579, 587 (Tenn. Crim. App. 1996), *overruled on other grounds in State v. Williams*, 977 S.W.2d 101 (Tenn. 1998). Where the mens era requirements for an offense's elements vary, a trial court has a duty to set forth the mental state for each element clearly so the jury can determine whether the State has met its burden of proof. *Id*.

In this case, the record reflects that the trial court instructed the jury with respect to the offense of aggravated sexual battery as follows:

> For you to find [the Defendant] guilty of aggravated sexual battery, the State must have proven beyond a reasonable doubt the existence of the following essential elements: One, that he had unlawful sexual contact with the alleged victim, [C.R.], in which the [D]efendant intentionally touched her intimate parts or the clothing covering the immediate area of her intimate parts; and that two, [C.R.] was less than thirteen years of age; and three, that he acted either intentionally, knowingly or recklessly.

The trial court then explained the culpable mental states of intentionally, knowingly, and recklessly. It also explained that the element of "unlawful sexual contact" required that the Defendant have committed the element of sexual contact intentionally:

> Sexual contact includes the intentional touching of the alleged victim's intimate parts or the intentional touching of the clothing covering the immediate area of the alleged victim's intimate parts if that intentional touching can be reasonable construed as being for the purpose of sexual arousal or gratification.

We cannot agree with the Defendant that the trial court's instructions mislead the jury as to the culpable mental states required for the offense of aggravated sexual battery. This Court has previously upheld nearly identical instructions issued for the offense of aggravated sexual battery. *See State v. Chester Wayne Walters*, No. M2003-03019-CCA-R3-CD, 2004 WL 2726034 (Tenn. Crim. App. Nov. 30, 2004), *perm. app. denied* (Tenn. Mar. 21, 2005). In this case, as in *Walters*, the trial court clearly explained that the element of "sexual contact" must have been committed intentionally, with the specific purpose of deriving sexual arousal or gratification. As such, the trial court satisfied its duty of clearly setting forth the mental state for each element of the offense of aggravated sexual battery. *See Howard*, 926 S.W.2d at 587. Thus, the trial court did not mislead the jury when it mentioned

to the jury the mens rea of "recklessness," which was the necessary culpable mental state for the age of the victim. *See Walters*, 2004 WL 2726034 at *14. Because the trial court did not breach "a clear and unequivocal rule of law" when it instructed the jury on the offense of aggravated sexual battery, it did not commit plain error. *See Smith*, 24 S.W.3d at 282-83. The Defendant is not entitled to relief on this issue.

### b. Disjunctive Use of "Or" in the Jury Charge on Mens Rea

The Defendant contends that the trial court violated his constitutional right to a unanimous verdict when it described the mens rea necessary for aggravated sexual battery and rape of a child by stating the mens rea in the disjunctive. He argues that the trial court instruction that the Defendant could be convicted if the evidence showed that he acted "intentionally, knowingly, **or** recklessly" erroneously charged the jury in the disjunctive. The State responds that charging mens rea in the disjunctive does not violate a defendant's right to a unanimous verdict.

Under Tennessee law, a defendant has a constitutional right to a unanimous verdict before a conviction for a criminal offense may be imposed. *State v. Shelton*, 851 S.W.2d at 134; *State v. Brown*, 823 S.W.2d 576, 583 (Tenn. Crim. App. 1991). Protection of this right often requires "special precautions [by the court] to ensure that the jury deliberates over the particular charged offense, instead of creating a 'patchwork verdict' based on different offenses in evidence." *Id*. at 134. For example, where the proof shows several offenses and the charging instrument contains insufficient counts to accommodate each offense, a trial court typically takes the "special precaution" of requiring an election of offenses from the State. *State v. James Clayton Young, Jr.*, No. 01C01-9605-CC-00208, 1998 WL 258466, at *5 n.4 (Tenn. Crim. App., at Nashville, May 22, 1998), *no Tenn. R. App. P. 11 application filed*. Generally, however, "alternative theories, mental states, modes of committing the crime, or means by which the crime was committed may be submitted to the jury without the necessity of precautions to assure jury unanimity." *Id*.

In this case, as mentioned above, when the trial court defined the elements of aggravated sexual battery and rape of a child to the jury, it instructed the jury that the Defendant must have acted "either intentionally, knowingly or recklessly." The Defendant argues this use of the word "or" allowed for each member of the jury to base his or her determination of the Defendant's guilty mental state on a different level of mens rea, whereas the Tennessee Constitution requires the jury agree upon the mens rea with which the Defendant committed his bad acts.

We cannot agree with the Defendant that the disputed jury instruction violated his right to a unanimous verdict. In this case, the State issued an election of offenses in which it identified the specific instances of the Defendant's conduct upon which the jury should

26

base its determination of the Defendant's guilt with respect to each of the charged offenses. Thus, the jury was not tasked with unanimously agreeing upon which of several criminal acts established by the evidence demonstrated the Defendant's guilt of rape of a child and aggravated sexual battery. Instead, the jury had the comparatively simple burden of determining whether the Defendant committed the acts as alleged in the State's election of offenses.

In our view, the use of language allowing for differing conclusions among jurors as to a defendant's exact mens rea does not violate a defendant's right to a unanimous jury verdict. As long as the jury unanimously determines that the defendant possessed a mens rea required for the alleged crime, the Defendant's right to a unanimous verdict is not violated. As such, we conclude that the jury instructions in this case were proper. Because the trial court did not breach "a clear and unequivocal rule of law" when it instructed the jury on rape of a child, it did not commit plain error. *See Smith*, 24 S.W.3d at 282-83. The Defendant is not entitled to relief on this issue.

### 5. Sentencing

We next turn to evaluate the Defendant's sentence.[3] When a defendant challenges the length, range, or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2006). This presumption, however, is conditioned upon the affirmative showing in the record that the trial court properly sentenced the defendant. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). As the Sentencing Commission Comments to this section note, the burden is on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts. If the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration and proper weight to the factors and principles relevant to sentencing under the 1989 Sentencing Act, T.C.A. § 40-35-103 (2006), we may not disturb the sentence even if a different result was preferred. *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377

---

[3]As recounted above, the trial court ruled on this second amended motion and held a hearing. At the hearing, the trial court found that the Defendant was not entitled to a new trial on the basis of ineffective assistance of counsel but that he was entitled to a sentence reduction. The trial court entered an order denying the motion new trial but reducing the Defendant's sentence from eighteen to fifteen years. For reasons explained above, this order was a nullity and the judgment subsequently entered reducing the Defendant's sentence was of no effect. We now evaluate the Defendant's sentence for plain error, taking into account the arguments he made against his sentence in his second amended motion for new trial.

(Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

In conducting a de novo review of a sentence, we must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 4-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2009); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The trial court in this case sentenced the Defendant in 2006, at a time when Tennessee sentencing law was in flux due to several recent U.S. Supreme Court decisions. In 2004, the U.S. Supreme Court held in *Blakely v. Washington* that the elevation of a defendant's sentence above the "prescribed statutory maximum" based upon anything other than the fact of a prior conviction violates the defendant's right to a jury trial. 532 U.S. 296, at 301 (2004). In 2005, in *Gomez I*, the Tennessee Supreme Court held that the Tennessee Criminal Sentencing Reform Act of 1989 did not run afoul of *Blakely*. *State v. Gomez*, 163 S.W.3d 632, 654-62 (Tenn. 2005) ("*Gomez I*"). The Legislature enacted the 2005 Sentencing Reform Act, which complied with *Blakely* by eradicating presumptive sentences and establishing advisory sentencing guidelines, with the changes taking effect on June 7, 2005. In 2007, the U.S. Supreme Court held that California's sentencing code, which was very similar to Tennessee's 1989 Sentencing Reform Act, violated the defendant's right to a jury trial, as defined in *Blakely*. *See Cunningham v. California*, 549 U.S. 270, 293 (2007). Shortly thereafter, in *Gomez II*, the Tennessee Supreme Court held, in response to *Cunningham*, that, to the extent Tennessee's 1989 Sentencing Reform Act permitted elevation of a presumptive sentence based upon judicially determined facts other than the fact of an admission or a prior conviction, it violated the defendant's right to a jury trial. *State v. Gomez*, 239 S.W.3d 733, 741 (Tenn. 2007) ("*Gomez II*").

Applying *Blakely* and *Gomez II*, this Court has held that a defendant who committed his crime before July 1, 2005, may either be sentenced under the 1989 Criminal Sentencing Reform Act and in accordance with *Blakely* and *Gomez II*, or he may sign an "ex-post facto waiver," which allows the trial court to sentence him under the 2005 Sentencing Reform Act. *See State v. Saint*, 284 S.W.3d 340, 347 (Tenn. Crim. App. 2008); *see also State v. Joe Allen Brown*, No. W2007-00693-CCA-R3-CD, 2007 WL 4462990, at *4 n.1 (Tenn. Crim. App., at Jackson, Dec. 20, 2007), *no Tenn. R. App. P. 11 application filed*. In order to sentence a

28

defendant under the 1989 Criminal Sentencing Reform Act in accordance with *Blakely* and *Gomez II*, a trial court may not enhance a defendant's sentence above the presumptive minimum based upon factors, other than a defendant's prior convictions, not admitted by the defendant or found by a jury beyond a reasonable doubt. *Id.*

The Defendant committed the crimes in this case in 2004 and was sentenced in May 2006. Because the record indicates that the Defendant did not execute an ex post facto waiver, he was subject to sentencing under the 1989 Criminal Sentencing Act in accordance with *Blakely* and *Gomez II*.

The 1989 Criminal Sentencing Reform Act required the trial court to begin its determination of the appropriate sentence with a "presumptive sentence." T.C.A. § 40-35-210(c) (Supp. 2001). For Class A felonies, the presumptive sentence is the midpoint of the appropriate range for the offense. *Id.* When there are enhancement factors but no mitigating factors for a Class A felony, the trial court is required to set the defendant's sentence at the midpoint of the range or above the midpoint of the range. T.C.A. § 40-35-210(d). When there were mitigating factors but no enhancement factors for a Class A felony, the trial court was required to set the defendant's sentence at the midpoint of the range or below the midpoint of the range. *Id.* Finally, when there were enhancement factors and mitigating factors for a Class A felony, the trial court was required to "start at the midpoint of the range, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors." T.C.A. § 40-35-210(e). The presumptive sentence for a Class B felony under the 1989 Act is the minimum sentence in the range, if there are no enhancement or mitigating factors. T.C.A. § 40-35-210(c). *Blakely* and its progeny, however, preclude a trial court applying the 1989 Criminal Sentencing Reform Act from using enhancement factors other than prior convictions that were neither admitted by the defendant nor found by a jury beyond a reasonable doubt.

The Defendant in this case was sentenced as a Standard, Range I offender. Rape of a child, a Class A felony, has a sentence range of fifteen to twenty-five years. *Id.* § 39-13-502(b) (1997). The presumptive sentence for rape of a child is twenty years. *Id.* § 40-35-210(c) (Supp. 2001). Aggravated sexual battery, a Class B felony, has a sentence range of eight to twelve years. T.C.A. § 39-13-504(b) (1997). Its presumptive sentence is eight years. *See* T.C.A. § 40-35-210(c)(1). Under the 1989 Act, a trial court "may find" a defendant is an "especially mitigated offender" if (1) the defendant has no prior felony convictions; and (2) the court finds mitigating, but no enhancement factors. T.C.A. § 40-35-109(a) (1993). The trial court may reduce either an especially mitigated offender's minimum sentence by ten percent, his release eligibility date by twenty percent, or both. T.C.A. § 40-35-109(b) (1993). Whether a defendant is an especially mitigated offender rests within the discretion of the trial court. T.C.A. § 40-35-109(a); *see State v. Braden*, 867 S.W.2d 750,

762 (Tenn. Crim. App. 1993).

At the conclusion of sentencing in this case, trial counsel for the Defendant discussed with the trial court the implications of *Blakely*, which only recently had been decided. Defense counsel stated that the "absolute statutory minimum" sentence the trial court could impose for rape of a child was fifteen years. He also stated that, under *Blakely*, the presumptive sentence would be twenty years without parole. He nonetheless argued that, given the Defendant's age, the trial court should impose a fifteen-year sentence.

At the close of the sentencing hearing in this case, the trial court noted that, in determining the appropriate sentence for the Defendant, it had taken into account the evidence presented at trial and sentencing, the sentencing principles, the nature and characteristics of the Defendant's criminal conduct, the Defendant's potential for rehabilitation, the evidence offered on enhancement and mitigating factors, and the arguments made as to the presumptive sentence under *Blakely*. The trial court found that each sentence, except that for simple assault, was subject to one hundred percent sentencing.

The court applied two enhancement factors, which it determined the jury found beyond a reasonable doubt by virtue of its guilty verdicts, saying that "the jury found that [the offenses] occurred on more than one occasion" and that the defendant "abused a position of private trust" in order to facilitate the commission of his offenses. Defense counsel objected under *Blakely* to the trial court's application of these enhancement factors, but the trial court overruled his objection, explaining (though Counsel did not object on this basis) that, though no "occurring on more than one occasion" enhancement factor existed, it found the circumstance to merit additional punishment, though not on the level of consecutive sentencing, which ordinarily such a finding would support.

The court found that one "significant mitigating factor" existed, that the Defendant was "a hard-working individual [who] provided full support for his family throughout his life, as well as support for the grandchildren, apparently [supporting them], not only financially, but emotionally." The court elaborated on the aspects of the Defendant's character and social history that mitigated his culpability:

> I believe he had the major[ity] of his community come in and testify on his behalf about the type of person he is in the community. There's nothing in the presentence report or otherwise that ever suggests that anything like this had ever occurred before. I think there [were] some allegations at one time that the Court did not allow to be introduced into evidence about some possible allegation in Los Angeles, but apparently it was unfounded or never pursued or whatever the situation was, but the Court finds that [the Defendant] had a significant positive character and social history, community support, as well

as family support, and feels that all of those weigh very favorable to him.

The trial court then described the weighing process it undertook in enhancing the Defendant's sentence according to the applicable enhancement factors and reducing his sentence according to the mitigating circumstances:

> While the Court, under no circumstances, ever can understand, I guess you can say, or comprehend any type of sexual assault or abuse of minor children, I will say that this situation, while I accept the testimony of these girls, as I've already indicated in terms of my rule 33, this is certainly a highly unusual situation in that [there] doesn't seem to be a history of this and [the Defendant] has been visiting these children quite regularly for [the] last four or five years. What motivated it is certainly incomprehensible to the Court. As a general rule, the Court finds these type of offenses to be particularly egregious, although I think our legislature has taken that same attitude since they have, next to murder, put the child rape at the highest possible punishment there is and do[] not allow for parole. I think under all the circumstances, considering the nature of the offenses, the background of [the Defendant] and all the other factors that I have already discussed in one manner or another, that the Court is going to impose a sentence of 18 years on the rape of a child and 9 years on each of the sexual batteries.

The trial court also sentenced the Defendant to eleven months and twenty-nine days for his simple assault conviction. The trial court ordered the sentences to be served concurrently, for a total effective sentence of eighteen years.

We first review the trial court's application of mitigating and enhancement factors. The trial court applied two enhancement factors to the Defendant's sentence: that his offenses occurred on more than one occasion and that he abused a position of private trust. A defendant's commission of his offenses on one or more occasions, however, is not a statutory enhancement factor. *See* T.C.A. § 40-35-114(1)-(24) (2003). A trial court may enhance a defendant's sentence based upon only one of the statutory enhancement factors. Thus, the trial court erred when it enhanced the Defendant's sentences based upon the offenses taking place on separate occasions.

The trial court committed further error by enhancing the Defendant's sentence on the basis of enhancement factor (16), that the Defendant abused a position of private trust to facilitate the commission of his crimes. The trial court attempted to justify under *Blakely* its application of this factor by asserting that, in convicting the Defendant, the jury implicitly found beyond a reasonable doubt that the Defendant abused a position of private trust. Neither child rape nor aggravated sexual battery, however, requires a jury to find that the

31

defendant abused a position of private trust in the facilitation of his crimes. A jury did not find beyond a reasonable doubt, therefore, that the Defendant abused a position of private trust to facilitate the commission of his crimes. *Blakely* and *Gomez II* unambiguously prohibit a trial court from enhancing a defendant's sentence based upon anything other than a defendant's criminal record, his admissions, and enhancement factors found beyond a reasonable doubt by a jury. Thus, the trial court erred when it applied enhancement factor (16) to the Defendant's sentences. *See State v. Mustapha Boutchiche*, No. E2007-00473-CCA-R3-CD, 2009 WL 102949, *13-14 (Tenn. Crim. App., at Knoxville, Jan. 12, 2009), *perm. app. denied* (Tenn. June 22, 2009).

Because of the trial court's errors in sentencing the Defendant, we will review the Defendant's sentence de novo with no presumption of correctness. *See Ashby*, 823 S.W.2d at 169. Because the Defendant lacks a prior criminal record and the record fails to support the application of any other statutory enhancement factor, no enhancement factors apply to the Defendant's case. The trial court determined that the Defendant's lack of a history of sexual misconduct and "significant positive character and social history, community support, as well as family support" mitigated his punishment. The record supports the trial court's finding that the Defendant had a positive reputation and had no prior convictions for sexual offenses. Thus, the Defendant's good reputation and lack of a prior record fall within the "catch-all" mitigating factor (13), which includes "any other factor consistent with the purposes of this chapter." T.C.A. § 40-35-113 (2003). In summary, no enhancement factors applied, but two mitigating factors applied to the Defendant's case.

Under the 1989 Sentence Reform Act, because no enhancement factors existed but two mitigating factors existed, the trial court was required to set the Defendant's sentence for aggravated sexual battery at the presumptive, minimum sentence of eight years. *See* T.C.A. § 40-35-210(c). Therefore, we modify the Defendant's sentence for each count of aggravated sexual battery from nine to eight years.

As to his conviction for rape of a child, the 1989 Sentence Reform Act required the trial court to set the Defendant's sentence at or below the presumptive, midpoint sentence of twenty years, reducing the Defendant's sentence as it believed the mitigating factors required. *See* T.C.A. § 40-350210(d). Reviewing the Defendant's sentence de novo, we note that the record supports the presumptive sentence of twenty years in this case because, in our view, the mitigating factors advanced by the Defendant do not weigh greatly in the Defendant's favor. In our view, the fact that, up until the Defendant sexually abused his granddaughters, he had never been convicted of a criminal offense only negligibly mitigates his culpability for sexual abusing his granddaughters. Similarly, the Defendant's good reputation among members of his family and his community, in our opinion, only minimally lowers his culpability for inflicting the well-documented trauma of sexual abuse upon his granddaughters. Also, although a defendant's remorse is a well-established mitigating factor

under subsection (13)'s "catch-all" provision, the Defendant never expressed remorse, claiming innocence through trial and sentencing. We affirm the Defendant's eighteen-year sentence for rape of a child.

Finally, the designation of a defendant as an especially mitigated offender, however, is a matter of the trial court's discretion. *State v. Braden*, 867 S.W.2d 750, 762 (Tenn. Crim. App. 1993). A trial court designates a defendant as especially mitigated offender only where the judge desires "to depart from even the minimum sentence for a Range I offender and impose lesser penalties." T.C.A. § 40-35-109. In this case, although the trial court gave the mitigating factors more weight than we in our de novo review gave to the factors, the trial court nonetheless refrained from designating the Defendant an especially mitigated offender. The trial court did not abuse its discretion in refraining, and we, in reviewing the Defendant's sentence de novo, similarly refrain from designating the Defendant an especially mitigated offender. The modified sentences for aggravated sexual battery and rape of a child remain, therefore, eight and eighteen years, respectively.

## III. Conclusion

After a thorough review of the record and applicable law, we conclude that the evidence supports the Defendant's convictions, that the trial court did not err in the admission and exclusion of evidence, and that it properly instructed the jury. We decline to address the issue of the effectiveness of counsel at the Defendant's trial. We conclude, however, that the trial court erred in sentencing the Defendant and, therefore, modify the Defendant's sentence for rape of a child to eighteen years and his sentence for aggravated sexual battery to eight years, for a total effective sentence of eighteen years in the Tennessee Department of Correction.

_____
ROBERT W. WEDEMEYER, JUDGE